LYNN BOMAR, Warden, Respondent-Appellant

*v.*

STATE ex rel. FRED A. STEWART, Petitioner-Appellee.

(*Nashville,* December Term, 1956)

Opinion filed March 8, 1957.

Rehearing Denied April 1, 1957.

Henry C. Foutch, Assistant Attorney General, for respondent-appellant.

Robert L. Taylor, Memphis, Trabue & Sturdivant, Nashville, for petitioner-appellee.

Mr. Justice Tomlinson delivered the opinion of the Court.

By means of petiton for writ of habeas corpus Stewart sought release from the penitentiary on the ground that he was being illegally restrained. The illegality alleged is that the judgments under the authority of which he was being held were "void on their face". They were three separate judgments of the Criminal Court of Montgomery County reciting that Stewart, appearing "in person and by counsel and * * * being arraigned at the bar, plead guilty" to (1) kidnapping, (2) armed robbery and (3) grand larceny, as charged in the respective indictments. The specific illegality alleged is that Stewart was seventeen (17) years of age at the time of the rendition of these judgments; hence, that this Criminal Court did not have jurisdiction. When persons less than eighteen (18) years of age are charged with a criminal offense "original, exclusive jurisdiction" is vested in the Juvenile Court. Code, sec. 37-242, 37-243.

From the action of the Trial Court in sustaining the petition after hearing proof as to Stewart's age, the Warden has appealed.

At the time of Stewart's arraignment, in response to an inquiry, he told the district attorney, and his Court appointed lawyer, and the Trial Court that he was eighteen (18) years of age. He likewise so represented to the officials at the penitentiary when being committed.

The proof received by the Trial Court on the hearing of this petition shows conclusively that Stewart was born on May 6, 1938. The offenses to which he plead guilty were committed on April 28, 1955, and the pleas of guilty were received May 10, 1955. He was four days more than seventeen (17) years old, therefore, at the time of the rendition of these judgments, and was on parole from the State Training and Agricultural School at the time. He filed this petition when he was about 18½ years old.

■ The relief sought is release from prison. The overturning of the respective judgments is a necessary prerequisite to the procuring of that relief. This is, therefore, a collateral attack upon each of the judgments sentencing him to prison. *Jordan v. Jordan*, 145 Tenn. 378, 454, 239 S.W. 423.

■ If a judgment sought to be collaterally attacked was rendered by a Court of special jurisdiction, then it is subject to collateral attack unless the jurisdictional requirements appear upon the face of the judgment or the record in the case in which that judgment was rendered. But if the Court rendering a judgment sought to be attacked collaterally is one of general jurisdiction, there is a presumption that nothing shall be intended to be out of its jurisdiction except that which so appears upon the face of the judgment or in the record of the case in which that judgment is rendered. There is a

splendid discussion of these two classes of courts in *Brewer v. Griggs,* 10 Tenn. App. 378, 393-394. Several decisions of this Court are there cited and discussed.

Since the age of Stewart does not appear in either of these judgments or the record of the case in which that judgment was rendered, in order to determine whether such judgment may be collaterally attacked, it is necessary to first ascertain whether the Criminal Court of Montgomery County (the Court rendering the judgments) is one of general jurisdiction or one of special jurisdiction.

■ Freeman in his text on Judgments says that there is no well defined test by which to determine to which of the two above mentioned classes a particular Court belongs. Generally speaking, if the Court be vested with a general common law jurisdiction, that is, proceeding according to the course of common law, it is a Court of general jurisdiction. If such be the case, then the fact that its powers are limited does not bring it within the other class. *Pope v. Harrison,* 84 Tenn. 82, 89, 90.

■ 14 American Jurisprudence, page 249, defines a Court of general jurisdiction as being one which has the power to hear and determine suits, civil or criminal, according to the law of the State. About the same definition in meaning is found in 21 C.J.S., Courts, sec. 2, p. 19. Its statement is that a Court of general jurisdiction is one "which takes cognizance of all causes, civil or criminal, of a particular nature".

■ The Criminal Court of Montgomery County falls within each of the definitions stated. It is, then, a Court of general jurisdiction.

In *Puckett v. Wynns,* 132 Tenn. 513, 523, 178 S.W. 1184, 1186, the applicable rule is stated viz.:

"Upon collateral attack on a judgment or decree of a court of general jurisdiction by parties or privies thereto, the rule is that such judgment or decree cannot be questioned, except for want of authority over the matter adjudicated upon, *and the want of authority must be found in the record itself. Wilkins v. McCorkle,* 112 Tenn. (688), 707, 80 S.W. 834. (Emphasis supplied.)

"In the absence of anything in the record to impeach the right of a court to determine the question involved, there is a conclusive presumption that it had such right." ,

If we are to adhere in this case to this rule which has been so consistently followed down through the years, see *Edwards v. Puckett,* 196 Tenn. 560, 568, 268 S.W.2d 528, the Trial Court will have to be reversed, because neither of the judgments in this case or the record in which such judgment was rendered by this Court of general jurisdiction discloses any want of authority to pronounce that judgment. Hence, collateral attack was not permissible. And the evidence upon which the Court acted should not have been considered.

A strong plea in behalf of this petitioner is made because of his youth. If a Court makes an exception to a general rule because it is a hard case, sooner or later that Court will be embarrased by reference to the decision in which it departed from the rule. Confusion and uncertainty will follow.

486

The public policy declared by the Legislature with reference to persons under eighteen (18) years of age is that such person shall not be ''brought into contact with or confined in any enclosure with adult convicts or prisoners'' while his or her case is pending, etc. It may be that this Court in many cases involving a juvenile will feel the necessity of making an exception to this rule denying collateral attack in order to carry out this public policy purpose. But to depart from that rule in this case would not accomplish that purpose. This petitioner has been confined under the authority of these judgments with adult convicts and prisoners for some eighteen (18) months and is well beyond the age limit of eighteen (18) years which the legislature had in mind in its declaration of public policy.

The judgment of the Court below will be reversed, and the petition for the writ denied.

## On Petition to Rehear

The petition to rehear asserts that the rule with reference to collateral attack upon a judgment of a Court of general jurisdiction does not apply to a judgment of conviction of a criminal offense. No Tennessee decisions directly in point have been found. By indirection, some two or three seem to refute petitioner's insistence.

*State v. Galloway,* 45 Tenn. 326, 337 (a contempt proceedings) observes that a judgment is void *if it appears in the record* that the Court was without jurisdiction. *State v. McClellan,* 87 Tenn. 52, 55, 9 S.W. 233, says that if a certain notice were necessary it would be presumed to have been given on collateral attack unless it *affirmatively appeared in the record* that notice had not been

given. *Cantrell v. State,* 190 Tenn. 64, 69, 277 S.W.2d 772, 774, incidentally observed that the lack of jurisdiction in a criminal proceedings "must also be determined from the face of the record".

Turning to authorities outside this jurisdiction, there appears in 39 C.J.S., Habeas Corpus, sec. 16, p. 456, this statement:

"Where the court had general jurisdiction of the cause and the person, error in the determination of questions of law or fact on which its jurisdiction in the particular case depends is error in the exercise of jurisdiction, and, in accordance with the general rule, affords no ground for habeas corpus. This rule has been applied to findings as to the age, status, and domicile or residence of a person * * *."

The text of 25 American Jurisprudence, page 161, is to the same effect.

*State ex rel. Du Fault v. Utecht,* 220 Minn. 431, 19 N.W.2d 706, 707, 161 A.L.R. 1316, 1319, is in point. There, the petition was denied because, to use the language of the Court:—"There is nothing in the record to indicate that the court did not have jurisdiction over the offense and the person of relator". In the course of the opinion the Court said:

"In *State ex rel. Slayton v. Whittier,* 108 Minn. 447 122 N.W. 319, this court held that a judgment entered in proceedings under L.1905, c. 285, authorizing the committal of incorrigible minors to the state training school, which recites all the jurisdictional facts, cannot be impeached or contradicted collaterally on a writ of habeas corpus." (Citing cases.)

In the California case of Ex parte Downs, 95 Cal. App. 571, 273 P. 143, 144, relator sought release from prison by means of habeas corpus on the allegation that he was less than eighteen years old at the time of his trial and conviction in the criminal court; that in the criminal case the Trial Judge had refused his motion to transfer the case to the Juvenile Court because of his age. This refusal was based on the fact that, in response to the motion to transfer, the Trial Judge found from evidence that defendant was eighteen years of age, though it developed that such finding was erroneous. The petition, in the subsequent habeas corpus proceedings, was denied and the reason assigned by the Court was this:

"Where the court has determined such facts in favor of the existence of jurisdiction, its determination, even though erroneous, is binding against collateral attack."

A clear statement of the rule is found in the New York case of *People ex rel. Hubert v. Kaiser,* 206 N.Y. 46, 99 N.E. 195, 197, to-wit:

"* * * when jurisdiction depends on the existence of a certain fact, and the court has found the fact, the fact stands until reversed upon direct" appeal.

The New York case of *People ex rel. Davis v. Jennings,* 133 Misc. 538, 232 N.Y.S. 603, 605, though the decision of a *nisi prius* court, is referred to because it makes the same question as to the relator's age when convicted in a previous case of some criminal offense. The writ was denied with this observation:

"Where the jurisdiction depends upon certain facts, and the court has passed upon those facts, its determination is conclusive until reversed or set aside", citing several N.Y. cases.

In the present case the jurisdiction of the criminal court over Stewart depended, in so far as pertinent here, upon a certain fact, to-wit, his age. The Trial Court made inquiry as to that fact, and found that Stewart was eighteen years old. This finding was based upon Stewart's own statement to his Court appointed attorney and to the district attorney. Such being the situation, the Court's finding in the matter is conclusive on collateral attack, according to the weight of authority.

Petitioner has cited a number of cases outside this jurisdiction in support of his insistence. As a matter of courtesy to a well prepared petition and supporting brief, this Court would like to discuss each of those cases. However, that must be foregone because it would unduly prolong this response. In our judgment the only one of those cases in point is *State ex rel. Clayton v. Jones,* 192 La. 671, 188 So. 737. By a statement made in that opinion we are lead to think that Louisiana considered its Criminal Court one of limited jurisdiction. It makes the statement that "the record of the Court of limited jurisdiction must show affirmatively such facts as confer jurisdiction". Unless that be the distinction, then we are unable to reconcile the decision with what we consider the majority view, and the sounder rule.

Two of the three Tennessee cases referred to in the petition, *State ex rel. Guy v. Foster,* 160 Tenn. 285, 23 S.W.2d 660, 24 S.W.2d 897, and *State ex rel. Brown v. Grosch,* 177 Tenn. 619, 152 S.W.2d 239, were extradition

cases wherein the proof heard was on petitioner's insistence that he was not in the demanding State at the time of the alleged offense. In the third, *State ex rel. Haywood v. Superintendent, Davidson County Workhouse,* 195 Tenn. 265, 259 S.W.2d 159, the question dealt with was the constitutionality of the Davidson County Juvenile Act.

The remaining insistences of the petition are discussed and determined in the opinion heretofore announced. Nothing of benefit can be accomplished by repeating that discussion. Incidentally, however, in response to counsel's sincere plea with reference to the tender years of this youth, "ignorant of his rights, naturally surrounded by hostile sentiment", etc. attention is called to the fact though it really is of no importance here, that Stewart's prior encounters with the law justifies the presumption that he had gained considerable knowledge as to procedure, etc., of Courts and of his rights. He was at the time of the commission of the offenses involved here on parole from the State Training and Agricultural School.

Petition to rehear is denied.